**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.    **JANE BYRAM,** | ) | |
| | ) | |
|       **Plaintiff,** | ) | **CIV-15-** 747-M |
| v. | ) | |
| | ) | |
| 1.    **THE STATE OF OKLAHOMA ex rel** | ) | |
|       **THE UNIVERSITY OF CENTRAL** | ) | |
|       **OKLAHOMA, and** | ) | |
| 2.    **DEBI YOUNG, in her individual** | ) | |
|       **capacity as Business Manager** | ) | |
|       **for the University of Central** | ) | |
|       **Oklahoma,** | ) | |
| 3.    **MARK RODOLF, in his individual** | ) | |
|       **capacity as Assistant Vice President** | ) | |
|       **of Facilities Management for the** | ) | |
|       **University of Central Oklahoma, and** | ) | |
| 4.    **CARRIE IRWIN, in her individual** | ) | |
|       **capacity as Manager of Employee** | ) | |
|       **Relations,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
|       **Defendants.** | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**COMES NOW** the Plaintiff, Jane Byram, and for her causes of action against the Defendants herein alleges and states as follows:

**PARTIES**

1. Plaintiff, Jane Byram, is an adult female residing in Oklahoma County, Oklahoma.

2. The Defendants are:

   a. The State of Oklahoma ex rel. The University of Central Oklahoma

-1-

("UCO"), an entity conducting business in Oklahoma County, Oklahoma;

      b.      Debi Young, in her individual capacity as Business Manager for Defendant UCO;

      c.      Mark Rodolf, in his individual capacity as Assistant Vice President of Facilities Management for Defendant UCO; and

      d.      Carrie Irwin, in her individual capacity as Manager of Employee Relations for Defendant UCO.

**JURISDICTION AND VENUE**

3. Plaintiff's causes of action are based on (1) disability discrimination in violation of the Rehabilitation Act and the Oklahoma Anti-Discrimination Act ("OADA"); (2) retaliation for use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* and corresponding Oklahoma state law protecting the rights embodied by the FMLA; (3) age discrimination in violation of the OADA; (4) violation of Plaintiff's First Amendment Right to Free Speech made actionable by 42 U.S.C. § 1983; (5) tortious interference with a contract; (6) interference with prospective economic advantage; and (7) whistleblowing.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma and the Defendants may be served in Oklahoma County, Oklahoma. Oklahoma County is located within the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff timely filed a Charge of Discrimination with the EEOC on or about November 24, 2014. Plaintiff subsequently received by mail a right to sue letter from the EEOC issued on or about June 25, 2015. This case is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter. Plaintiff also timely filed a Notice of Governmental Tort Claim on or about November 26, 2014, which was denied on or about January 13, 2015. This case is timely filed within the requisite period thereafter.

## STATEMENT OF FACTS

7. Jane Byram began her employment with Defendant UCO on or about August 7, 1990 as a Material Control Technician in the Physical Plant. In or around 2002, Byram was promoted to Material Control Coordinator. In or around 2006, Byram was promoted to Supervisor of Material Control.

8. As Supervisor of Material Control, Byram directly reported to then-Director Mark Rodolf.

9. Throughout her employment with UCO, Byram's job performance was at least satisfactory, if not excellent. In fact, Byram was selected as Employee of the Quarter in or around 2002 and received a UCO Exceptional Performance Award in or around November

2011. And, on or about July 22, 2013, Byram was rated as "Above Expectations" by current Director Fred Fieth on her 2012-2013 performance evaluation.

10. Despite her excellent performance over a 24 year period, Byram was wrongfully terminated on or about August 25, 2014. UCO stated the reason for her termination was alleged excessive errors, failure to take responsibility for her job duties, and not following the directives of her supervisor. However, such reasons were merely pretext for unlawful discrimination and retaliation.

11. Specifically, on or about June 10, 2014, Byram's reporting structure was changed such that she began directly reporting to Business Manager Debi Young. Young immediately began making changes to Byram's duties and work schedule. For instance, on or about June 16, 2014, Young stated that Byram's work hours would be changed from 7:00 a.m. to 4:00 p.m. to 8:00 a.m. to 5:00 p.m. Young further stated that Byram was being removed from her office and placed with two of her subordinates. Byram told Young these changes were discrimination because she was the only person affected and would be the only supervisor without an office.

12. Shortly thereafter, Byram contacted UCO's Human Resources to schedule a time to discuss Young's discriminatory treatment.

13. On or about June 17, 2014, Byram received a write-up from Young and Manager of Employee Relations Carrie Irwin for allegedly speaking negatively regarding Young's supervision of her. However, Byram's comments were simply discussion with co-

workers regarding Young's discriminatory actions. Byram had not previously been disciplined in her 24 years of employment with UCO.

14. On or about June 18, 2014, Byram met with Irwin to discuss Young's discriminatory and harassing actions.

15. During the discussion, Byram also reported other unlawful conduct which was a matter of grave public concern. Particularly, Byram was concerned that Rodolf, who had been promoted to Assistant Vice President of Facilities Management, was using Young to get rid of Byram. Specifically, Byram told Irwin that while reporting to Rodolf, Rodolf directed Byram and other UCO employees to perform personal work for Rodolf while they were being paid with State funds by UCO. Rodolf sent Byram and others to perform work at his home or at the home of his girlfriend. On one occasion, Byram was asked to deliver plants purchased with college funds to Rodolf's home. On another occasion, Byram was asked to fix a water heater at Rodolf's house. Rodolf also sent Byram and other employees to his girlfriend's home to fix her pool and her daughter's car.

16. Rodolf also used Byram's personal bank account to purchase gifts for his girlfriend.

17. Byram also shared with Irwin other discriminatory actions taken against her while employed at UCO. For instance, in or around 2011, Byram expressed interest in the vacant Assistant Director position. Rodolf discouraged Byram from applying for the position, stating that Business Manager Ann Barnes would be leaving her position soon and

he wanted Byram to take over as Business Manager. Thereafter, at a staff meeting, Rodolf told Byram not to apply for the Assistant Director position. Thus, another individual was selected as the Assistant Director.

18. When Barnes eventually left the Business Manager position, Rodolf moved Young in the position. Thereafter, Rodolf told Byram he did not select her as Business Manager because Young told him Byram did not want the position. However, Byram made no such statement.

19. After meeting with Irwin and reporting this conduct, Irwin immediately contacted Young and shared Byram's complaint.

20. On or about June 19, 2014, Young confronted Byram about her complaint, stating that the changes to Byram's work schedule and office move would still take effect. Byram told Young at that time that she would be retaining a lawyer due to Young's harassment and discriminatory actions.

21. On or about June 20, 2014, Young accused Byram of leaving a work-related seminar early. Byram told Young she had not left early, rather, she went to the restroom during the seminar and chose to stand in the back because her knee was hurting. Byram was injured as a child and over the years has experienced pain in her knee and back as a result. For the last several years, Byram has walked with a limp due to this injury.

22. On or about June 26, 2014, Byram was called to a meeting with Young, Rodolf, Irwin and Fieth. Byram was presented with another write-up for alleged negative statements

and untruthful responses. The write-up further stated that Byram made unfounded accusations against Rodolf, presumably referring to Byram's complaint to Human Resources regarding Rodolf.

23. Byram then took vacation leave from on or about July 14 until July 25, 2014. Byram returned to work on or about July 28, 2014.

24. After returning to work, Byram was forced to miss work due to her knee and back condition. Particularly, Byram went the hospital emergency room on or about August 11, 2014. She returned to work on or about August 18, 2014, but was not notified of her FMLA rights at that time.

25. On or about August 22, 2014, Byram was issued a final written warning by Young. The write-up contained numerous alleged performance deficiencies, some of which were not Byram's responsibility. Further, the allegations were false. For instance, Byram was accused of not entering accurate credit card charges in a Daily Expense Tracking spreadsheet (a new document required by Young). However, the numbers were not inaccurate. Rather, the amounts did not match credit card receipts because, while Byram may order 3 items from a retailer for one total amount, the credit card may be charged separately if the items shipped from different locations, resulting in 3 separate charge amounts.

26. Further, Byram was accused of causing a $15,000 budget deficit. However, managing the department's entire budget was not part of Byram's job description.

27. After this meeting, Byram returned to her work. Later that day, Young sent

Byram home and told her to return to work on August 25, 2014.

28. On or about August 25, 2014, Byram was notified of her termination by Young and Irwin. She was told the reason for her termination was alleged excessive errors, failure to take responsibility for her job duties, and not following the directives of her supervisor. She was not given the opportunity to provide any documentation in response to the August 22, 2014 performance allegations. As shown above, such reasons were false and merely pretext for unlawful discrimination.

29. Due to her chronic serious health condition, Byram is a qualified individual with a disability within the meaning of the Rehabilitation Act, the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"), in that she was disabled, has a record of disability, and/or was perceived as disabled due to her back and knee conditions, and visible limping, *inter alia*. Her disabilities substantially limit and/or limited her in one or more of her major life activities, including but not limited to walking, sleeping, and eating. Her disabilities impact one or more of her internal bodily processes, including but not limited to musculoskeletal, neurological and digestive function. However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

30. Upon information and belief, Byram has been replaced by an individual in her early 30s.

31. Following her termination, Defendant Young has made defamatory and

negative statements to third parties with whom Byram dealt during her termination. Specifically, Young called a salesman at AM Supply, a third party vendor, insisting that the salesman come to UCO for a meeting. Upon his arrival, Young asked the salesman several questions about Byram, indicating that Young believed Byram received favors or kickbacks from UCO vendors. The salesman told Byram that he had not given Byram any favors or gifts in exchange for AM Supply's business with UCO.

32. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered injuries described hereafter.

### COUNT I - Disability Discrimination

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33. This count is brought against Defendant UCO only.

34. Discrimination, failure to accommodate and retaliation based on a record of a disability, being perceived as disabled, or being disabled is in violation of the Rehabilitation Act.

35. As shown above, More specifically, Plaintiff was a qualified individual with a disability.

36. Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

37. A motivating factor in Plaintiff's termination was Plaintiff's disability and sick

leave taken due to such injury.

38.    As a direct and proximate result of Defendant UCO's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

39.    Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages, to the extent available.

## COUNT II - FMLA CLAIM

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

40.    This count is brought against Defendants UCO, Young and Irwin.

41.    The matters alleged above constitute retaliation for Plaintiff's use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

42.    Plaintiff was entitled to medical leave because she worked for Defendant UCO, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1250 hours within the one year prior to her need for leave.

43.    As shown above, Plaintiff suffered from a chronic serious health condition which required her to time off work and continued treatment by a health care provider.

44.    Defendants retaliated against Plaintiff for her use of FMLA leave by terminating her employment within a month of her return to work.

45. As the direct and proximate result of Defendants' willful conduct, Plaintiff has suffered injuries and is entitled to recovery of all damages or other relief allowed by the FMLA, including but not limited to, lost wages (past and future), liquidated damages, and attorney's fees and costs.

### COUNT III - Violation of FMLA Right under State Law

For her third cause of action, Plaintiffs incorporate all prior allegations and further allege and state as follows:

46. This Count is brought against Defendant UCO.

47. As shown above, Defendants retaliated against Plaintiff for her use of FMLA-qualifying medical leave. Defendants' actions were taken in response to Plaintiff's attempt to exercise her rights under the FMLA.

48. The matters alleged above constitute violations of Plaintiff's rights to family and medical leave under Oklahoma state law, Okla. Stat. tit. 74 § 840-2.22 and OPM 530:10-15-45.

49. As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and are entitled to recovery of all damages or other relief allowed by Oklahoma state law.

### COUNT IV - Age Discrimination

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

50. This count goes against Defendant UCO.

51. The matters alleged above constitute violations of the OADA in the form of age discrimination.

52. Plaintiff is entitled to relief under the OADA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was discharged and replaced by a significantly younger individual.

53. As damages, Plaintiff has suffered lost earnings, past and future, liquidated damages, and any other damages allowed by the OADA.

### COUNT V - Interference with Contract

For her fifth cause of action, Plaintiff incorporates all prior allegations and further allege and state as follows:

54. This Count goes against the individual Defendants.

55. The acts above-described constitute unlawful interference with a contract/employment relationship. Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant UCO when she was wrongfully terminated. Defendants had no justification, excuse, or privilege for such interference.

56. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

57. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VI - Interference with Prospective Economic Advantage

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

58. This count goes against the individual Defendants.

59. The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

60. Plaintiff had a reasonable expectation for profit, i.e. continued employment with Defendant UCO.

61. Defendants had knowledge of this relationship and/or expectancy.

62. Defendants intentionally induced or caused a breach or termination of Plaintiff's relationship or expectancy.

63. Such breach resulted in damage to Plaintiff.

64. As a result, Plaintiff is entitled to all damages allowed by state law.

## COUNT VII - WHISTLEBLOWING

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

65. This Count goes against Defendant UCO.

66. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to

participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

67. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

68. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of Plaintiff and against the Defendants and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS <u>10th</u> DAY OF JULY, 2015.**

<u>s/ Jana B. Leonard</u>
**LEONARD & ASSOCIATES, P.L.L.C.**
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA #22341**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800      TELEPHONE**
**(405) 239-3801      FACSIMILE**
<u>leonardjb@leonardlaw.net</u>
<u>johnstonlw@leonardlaw.net</u>

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
